**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case Number 25-0271 (JEB)** |
| | ) | |
| | ) | |
| **RICHARD THOMPSON,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT RICHARD THOMPSON'S**
**MOTION TO DISMISS THE INDICTMENT**

Defendant Richard Thompson, through undersigned counsel, respectfully moves under Federal Rule of Criminal Procedure 12(b)(3)(B) to dismiss the Indictment, which charges Mr. Thompson with a single count of possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) is unconstitutional because it violates the Second Amendment, both facially and as applied to Mr. Thompson, and also because it exceeds Congress's power under the Commerce Clause, both facially and as applied.

**Background**

The indictment in this case alleges that on April 7. 2025, Mr. Thompson, knowing he had previously been convicted of a felony "in District of Columbia case number 2022-CF-2173," possessed a firearm and ammunition that "had been possessed, shipped and transported in and affecting interstate and foreign commerce," in violation of 18 U.S.C. § 922(g).

Case number 2022-CF-2173 is Mr. Thompson's only prior felony conviction. It was a conviction for carrying a pistol without a license in violation of D.C. Code § 22-4504. Based on that conviction, on October 12, 2022, he received a suspended sentence of one year imprisonment

and one year of probation. He completed that sentence, including the period of probation, in approximately October 2023.

**Argument**

**I. The Indictment in this Case Must Be Dismissed Under the Second Amendment, and Because It Lacks Proper Authority Under the Commerce Clause.**

Federal law prohibits Richard Thompson from possessing a firearm or ammunition because he has a prior conviction for a crime "punishable by imprisonment for a term exceeding one year," that is, a felony and 18 U.S.C. § 922(g)(1). That prohibition violates the Second Amendment.

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022), a firearm regulation survives Second Amendment scrutiny only if the government proves it is "consistent with the Nation's historical tradition of firearm regulation." The Court reaffirmed and sharpened that test in *United States v. Rahimi*, 602 U.S. 680 (2024), and most recently, in *United States v. Hemani,* 608 U.S. 772 (2026), which struck down the neighboring federal firearm disability found in 18 U.S.C. § 922(g)(3) because the government's proffered historical analogues did not match the modern statute the government sought to defend in either purpose or operation. Felon disarmament under § 922(g)(1) also cannot make that showing and this motion preserves that facial challenge.

As applied to Mr. Thompson specifically, this Circuit's recent decision in *United States v. Richardson*, 188 F.4th 412 (D.C. Cir. 2026), does not save this prosecution. *Richardson* upheld § 922(g)(1) only "as applied to felons who are still under supervision as part of a criminal sentence at the time of their 922(g)(1) offense." *Id.* at 144. Mr. Thompson was under no such supervision when he allegedly possessed the charged firearm. Moreover, *Richardson* expressly left open the question whether § 922(g)(1) may constitutionally be applied to a felon who has completed his sentence and is no longer on supervision and this Court should hold that it may not.

Separately, § 922(g)(1) exceeds Congress's power under the Commerce Clause. Under *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), mere possession of a firearm is not economic activity Congress may regulate through the Commerce Clause, and a bare allegation that a firearm once crossed a state line does not supply the missing constitutional authority. Justice Thomas developed this point at length in his concurrence in *United States v. Hemani*, 608 U.S. 772, 795 (Thomas, J., concurring) (2026). And although *Fraternal Order of Police v. United States*, 173 F.3d 898, 907-08 (D.C. Cir. 1999), rejected a similar challenge based on § 922(g)(9)'s "jurisdictional element," that decision rests on a flawed inference from *United States v. Bass*, 404 U.S. 336 (1971), and reiterated *Scarborough v. United States*, 431 U.S. 563 (1977), which a growing body of authority now calls into doubt. *See Alderman v. United States*, 562 U.S. 1163 (2011) (Thomas, J., dissenting from the denial writ of certiorari) ("If the *Lopez* framework is to have any ongoing vitality, it is up to this Court to prevent it from being undermined by a 1977 precedent [*Scarborough*] that does not squarely address the constitutional issue."); *United States v. Squire*, 182 F.4th 481, 482 (5th Cir. 2026) (granting petition for rehearing en banc in case challenging Fifth Circuit precedent relying on *Scarborough* as basis for § 922(g)(1) Commerce Clause authority). And even accepting *Fraternal Order of Police*'s framework on its own terms, the indictment's bare, conclusory jurisdictional allegation does not satisfy the "case-by-case inquiry" that *Lopez* and *Fraternal Order of Police* both require.

## II. Section 922(g)(1) Violates the Second Amendment, Facially and As Applied to Mr. Thompson.

### A. Section 922(g)(1) Is Facially Unconstitutional.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. Courts apply a two-step framework set out in *Bruen* to determine whether a

particular firearm regulation is constitutional. ***First,*** a court must ask "whether the Second Amendment's plain text covers an individual's conduct," and if so, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24, 32. ***Second***, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 24. That inquiry "focuses on the principles that underpin our regulatory tradition," and "will often involve reasoning by analogy" to "well-established" historical laws that are "relevantly similar" to the modern regulation. *Rahimi*, 602 U.S. at 692; *Bruen*, 597 U.S. at 28-30. Two features are "central" to the comparison: "why" the historical regulation was in place and the "how" it was historically enforced. *United States v. Hemani*, 608 U.S. 772, 780-781 (2026) (citing *Bruen*, 597 U.S. at 29; *Rahimi*, 602 U.S. at 692). "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld," and "the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *Id.* at 773, 780-781. The government bears the burden to prove the validity of a Second Amendment restriction throughout. *Bruen*, 597 U.S. at 24.

The D.C. Circuit recently applied the *Bruen* framework in *Richardson* to hold that § 922(g) is constitutional "as applied to felons who are still under supervision as part of a criminal sentence at the time of their 922(g)(1) offense," based on a Founding-era tradition of temporarily disarming felons while they served forfeiture-based sentences. *Richardson*, 188 F.4th at 414, 418. The panel was careful to note the limits of its holding, expressly declining to "address the constitutionality of section 922(g)(1) as applied to … other felons" who have "finished serving their sentences," or to "even address whether Richardson, after serving his various criminal sentences, may have a viable Second Amendment claim against the continued application of section 922(g)(1) at that juncture." *Id.* at 419.

Applying *Bruen's* framework facially here, ***first,*** the Second Amendment's text does not exclude people convicted of crimes punishable by more than year, i.e., felons, from "the people" it protects. "The people" is a term of art used consistently throughout the Bill of Rights, and "convicted felons fall within 'the people' as contemplated by the First and Fourth Amendments." *United States v. Carrero*, 635 F. Supp. 3d 1210, 1212 (D. Utah 2022). There is "no reason to adopt an inconsistent reading of 'the people'" in the Second Amendment alone. *Range v. Att'y Gen.*, 69 F.4th 96, 102 (3d Cir. 2023) (en banc), *vacated on other grounds*, 144 S. Ct. 2706 (2024). And in *Rahimi*, the Supreme Court squarely rejected the government's attempt to limit the Amendment's coverage to "responsible" citizens, explaining that such a line does not "derive from our case law." 602 U.S. at 701-02; *see also id.* at 773 (Thomas, J., dissenting) ("The Government's claim that the Court already held the Second Amendment protects only 'law-abiding, responsible citizens' is specious at best."); *id.* at 774 (explaining that the government's theory that the Second Amendment protects only "responsible" and "law-abiding" citizens "is the Government's own creation, designed to justify every one of its existing regulations" and "has no doctrinal or constitutional mooring."). Felons thus fall into the category of "people" protected by the Second Amendment and the government must establish a historical tradition of disarming them that applies to Mr. Thompson.

***Second***, the government cannot carry its burden to show a Founding-era tradition of disarming all felons. The government has itself represented in other courts that "18 U.S.C. § 922(g)(1) is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." Govt. Br. in *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759, at *27-28 (1st Cir. May 13, 2011). Section 922(g)(1) traces to the Federal Firearms Act of 1938, which disarmed only those convicted of enumerated "crime[s]

of violence" and Congress did not extend the ban to all felons until 1961. *See* Pub. L. No. 87-342, 75 Stat. 757 (1961); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). A regulation "firmly rooted in the twentieth century" cannot satisfy *Bruen's* demand for a tradition traceable to 1791. *Bruen*, 597 U.S. at 2136-37, 2154 n.28.

*Richardson* did not directly resolve this facial question. The panel expressly "decline[d] to engage with the broadest arguments pressed by both sides," assumed without deciding that § 922(g)(1) restricts conduct covered by the Second Amendment's text, and rested its holding on the "narrow ground" that "felons still serving their criminal sentences" may be temporarily disarmed. *Richardson*, 188 F.4th at 417. The panel further recognized that "[o]ur sister circuits are deeply divided … on whether lifetime felon disarmament is constitutional absent some individualized inquiry into whether the individual felon is dangerous," comparing *Zherka v. Bondi*, 140 F.4th 68, 74-75 (2d Cir. 2025), and *United States v. Dubois*, 139 F.4th 887, 888-89 (11th Cir. 2025), with *Range*, 124 F.4th 218, 225 (3d Cir. 2024) (en banc), and *United States v. Williams*, 113 F.4th 637, 645-48 (6th Cir. 2024). *Richardson*, 188 F.4th at 417. Mr. Thompson preserves the argument that lifetime disarmament under § 922(g) is facially unconstitutional.

### B. *Richardson's* Narrow Holding Does Not Apply to Mr. Thompson, Who Had Completed His Entire Sentence for the Predicate Offense Before the Conduct Charged Here.

*Richardson* held § 922(g)(1) constitutional "as applied to felons who are still under supervision as part of a criminal sentence at the time of their 922(g)(1) offense." *Richardson*, 188 F.4th at 414 (emphasis added). Mr. Thompson was not under supervision, and was not serving any part of any criminal sentence, when the conduct charged in Count One allegedly occurred. His sole prior conviction is the same conviction the government has charged as the predicate here and was fully resolved more than a year before the charged offense. This is precisely the scenario

*Richardson* declined to decide. The panel was explicit: "[w]e do not address the constitutionality of section 922(g)(1) as applied to … other felons" who have "finished serving their sentences," and "we do not even address whether Richardson, after serving his various criminal sentences, may have a viable Second Amendment claim against the continued application of section 922(g)(1) at that juncture." *Id.* at 419.

Thus, unlike the defendant in *Richardson*, who committed his § 922(g)(1) offense while still on supervised probation for the very conviction the government charged as his predicate, *id.* at 416, Mr. Thompson was under no supervision for any offense at the time of charged offense. This distinction is critical. The Founding-era forfeiture laws *Richardson* catalogued disarmed felons who were "still serving their criminal sentences" and the disarmament was a "temporary" incident of an *ongoing punishment*, not a permanent status. *Id.* at 417-420 ("Felons could be *temporarily* disarmed while serving their criminal sentences, including supervision and monitoring.") (emphasis added). None of the historical sources *Richardson* cited — the Pennsylvania, Massachusetts, New York, Maryland, Virginia, and Kentucky forfeiture statutes, or the Shays' Rebellion pardons—disarmed a felon indefinitely after his sentence had been served in full. To the contrary, the entire premise of *Richardson*'s "greater-includes-the-lesser" logic explaining that the lesser restriction of temporary disarmament during supervision was justified because it was derivative of the greater power to imprison, *id.* at 421 (citing *Rahimi*, 602 U.S. at 699), has no application once the greater power has already been exhausted through completion of the sentence. In other words, in a case such as here, there is no historical "greater" punishment left to draw the "lesser" restriction from because Mr. Thompson had already served the entirety of the sentence imposed for the predicate conviction providing the basis for disarmament.

Because Mr. Thompson's situation falls squarely within the question *Richardson* expressly reserved, this Court should analyze it independently under *Bruen*'s framework. Using the historical materials *Richardson* catalogued reveals a historical tradition of *temporary* disarmament tied to an *ongoing* sentence. Given that such a link is entirely absent here, *Richardson* implicitly supports Mr. Thompson's claims. In the absence of historical evidence supporting indefinite disarmament of a felons generally, or Mr. Thompson in particular, this Court should therefore find § 922(g) unconstitutional.

### C. The Government Cannot Alternatively Show That As Applied to Mr. Thompson, § 922(g)(1) Allows for His Disarmament Under the Second Amendment.

There are courts that have suggested that, even if a blanket felon ban cannot survive *Bruen*, history may support disarming a narrower category of "dangerous" felons. *See, e.g., United States v. Watson*, 171 F.4th 1012, 1025 (7th Cir. 2026) (holding § 922(g)(1)'s disarmament of "dangerous" felons constitutional based on common law and historical precedent); *United States v. Williams* 113 F.4th 637, 657 (6th Cir. 2024) (holding that "nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous"); *United States v. Kimble*, 142 F.4th 308, 315 (5th Cir. 2025) (holding that "[c]lass-wide disarmament" of dangerous individuals "accords with both history and precedent"); *see also Kanter v. Barr*, 919 F.3d 437, 451, 454, 464 (7th Cir. 2019) (Barrett, J., dissenting) (recognizing that legislatures have historically "prohibited dangerous people from possessing guns"). Indeed, in *Rahimi*, the Supreme Court held that where a defendant's prior conviction demonstrates that he "poses a clear threat of physical violence to another, the threatening individual may be disarmed," at least temporarily. 602 U.S. at 698, 702. Even if, however, the necessary historical analogue existed to establish such a framework here, the government cannot justify disarming Mr. Thompson more than two years

after his predicate conviction for carrying a pistol without a license, and more than a year after he completed every obligation flowing therefrom.

Importantly, carrying a pistol without a license is an offense that requires no showing that the defendant did anything more than peaceably carry a firearm without securing a license. *See* D.C. Code § 22–4504. It is a regulatory offense that contains no element of violence or attempted or threatened violence. In fact, carrying a pistol without a license falls so far short of involving an element of violence or dangerousness that there is not even a consensus that it should be criminalized. To the contrary, a majority of states do not prohibit carrying of a pistol without a permit at all, meaning it is simply not crime. *See* Appellant's Opening Brief Addendum at 8a-10a, *United States v. Richardson*, No. 24-3151 (D.C. Cir. 2026) (providing survey of each state's license permitting laws). And in the minority of states that do criminalize carrying a pistol without a permit, many include statutory provisions that treat it as a misdemeanor rather than a felony. *See* C.R.S.A. 18-12-105(1); 430 ILCS 66/70(e); Md. Code Ann. Crim. Law § 4-203(c)(1); Minn. Stat. Ann. § 624.714; N.M. Stat. Ann. § 30-7-2(C); N.C. Gen. Stat. Ann. § 14-269(c); Or. Rev. Stat. Ann. § 166.250(5); 18 Pa.C.S.A. § 6106(a)(2); Va. Code Ann. § 18.2-308(A); Wash. Rev. code. Ann. § 9.41.050; Wis. Stat. Ann. § 941.23. There is nothing categorically or specifically dangerous about the predicate offense charged in this case. Absent some individualized showing that Mr. Thompson posed a present danger, a stale, fully-discharged licensing conviction cannot supply the dangerousness rationale that some courts have found to be sufficient to find § 922(g) constitutional.

## III. Section 922(g)(1) Exceeds Congress's Commerce Clause Power.

### A. Section 922(g)(1)'s Possession Prohibition Exceeds Congress's Commerce Power Under *Lopez* and *Morrison*.

As construed and applied here, § 922(g)(1) reaches Mr. Thompson's alleged possession of a firearm based solely on the assertion that the firearm "had been possessed, shipped and

transported" in commerce at some undefined earlier point. "So construed, it is difficult to see how § 922(g)(1) honors the principle of enumerated powers." *United States v. Bonner*, 159 F.4th 338, 341 (5th Cir. 2025) (Willett, J., concurring). Regulating mere possession, without any present connection to commerce, exceeds the outer boundary the Supreme Court drew in *Lopez* and *Morrison*.

Mr. Thompson's case tracks *Lopez* closely. Firearm possession, like the school-zone possession at issue there, is non-economic. *Lopez*, 514 U.S. at 561, 567. The Supreme Court has "reject[ed] the argument that Congress may regulate non-economic, *violent* criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison*, 529 U.S. at 617. That reasoning applies with at least equal force to the non-economic, *non-violent* possession alleged here. *See Bonner*, 159 F.4th at 342 (Willett, J., concurring) ("[A]ggregation is ordinarily appropriate only when the underlying activity is economic — and firearm possession is not.").

Furthermore, *Morrison* itself rejected a far more developed commerce theory than anything available or alleged here. Despite "extensive findings concerning the economic consequences of gender-motivated violence," the Court held that Congress lacked Commerce Clause authority to create a federal civil remedy for such violence because the government's theory rested on a "lengthy 'but-for' causal chain" that the Constitution does not tolerate. *Morrison*, 529 U.S. at 615-17. Accepting a contrary position would mean Congress "could regulate any crime," because "all activities affect interstate commerce" in some way in the aggregate. *Id.* Any theory here that a firearm's past unspecified interstate movement supplies a permanent jurisdictional hook for any subsequent possession anywhere by anyone suffers from the same defect identified in *Morrison* insofar as it has no logical stopping point.

Justice Thomas's concurrence in *Hemani* confirms this point. It emphasizes that Congress lacks the power to "regulate or ban possession of any item that has ever been offered for sale or crossed state lines." *Hemani*, 608 U.S. at 795 (Thomas, J., concurring) (quoting *Alderman v. United States*, 562 U.S. 1163, 1167 (2011) (Thomas, J., dissenting from denial of certiorari)). Treating a bare, backward-looking prior-travel allegation as constitutionally sufficient would "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id* at 795-796. (quoting *Lopez*, 514 U.S. at 567 (Thomas, J., concurring)). As Justice Thomas explained, "the mere possession of a firearm that long ago crossed state lines is not 'economic activity' in any sense," and *Lopez* therefore forecloses using aggregation to sustain § 922(g)'s possession ban. *Hemani,* 608 U.S. at 798.

Nor does *Scarborough v. United States*, 431 U.S. 563 (1977), supply the missing constitutional authority. *Scarborough* held only that, as a matter of statutory interpretation, "proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the *statutorily required* nexus" in a predecessor version of § 922(g). *Id.* at 564 (emphasis added). It said nothing about the Constitution. "No party alleged that the statute exceeded Congress' authority, and the Court did not hold that the statute was constitutional." *Alderman*, 562 U.S. at 1167 (Thomas, J., dissenting from denial of certiorari). *See also Hemani*, 608 U.S. at 800 ("*Scarborough*'s holding was statutory, not constitutional.") (Thomas, J., concurring) (quoting *United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (Ho, J., dissenting from denial of rehearing en banc)); *accord Bonner*, 159 F.4th at 342 (Willett, J., concurring). As a result, *Scarborough* and the cases that rely upon it simply do not establish that the Commerce Clause provides constitutional authority for prohibiting gun possession under § 922(g)(1).

### B. *Fraternal Order of Police* Does Not Foreclose Mr. Thompson's Commerce Clause Challenge Because It Rests on a Flawed Rationale.

*Fraternal Order of Police v. United States*, 173 F.3d 898 (D.C. Cir. 1999), rejected a Commerce Clause challenge to § 922(g)(9) because the statute "contains a 'jurisdictional element': in any prosecution under the provision for possession, the government must prove that the defendant possessed the firearm 'in or affecting commerce.'" *Id.* at 907. In reaching that conclusion, the panel relied principally on *United States v. Bass*, 404 U.S. 336 (1971), and reasoned that *Bass* resolved a statutory ambiguity in the defendant's favor to require the commerce phrase to modify "receives" and "possesses," not just "transports" so that it was "unnecessary" for the Court even to consider "whether Congress could constitutionally punish the 'mere possession' of firearms." *Id.* at 907-08 (quoting *Bass*, 404 U.S. at 339 n.4). As a result, *Fraternal Order of Police* inferred that § 922(g)(9) "must also fall within Congress's authority." *Id.*

The Court's inference does not follow. For precisely the same reasons a growing body of authority has explained that *Scarborough* does not support federal regulation of gun possession through the Commerce Clause, neither does *Bass*. *Bass*, like *Scarborough*, was a decision of pure statutory construction. It did not hold, and did not purport to hold, that the statute it construed was a constitutional exercise of commerce power. To the contrary, the *Bass* Court went out of its way to say that its statutory resolution made it "unnecessary to reach the question whether, upon appropriate findings, Congress can constitutionally punish the 'mere possession' of firearms." *Bass*, 404 U.S. at 339 n.4. Treating *Bass*'s avoidance of the constitutional question as though it resolved that question in favor of Commerce Clause authority for the federal government to prohibit firearm possession is the identical error the Fifth Circuit, sitting en banc, is now being asked to correct with respect to *United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996), as it relates to *Scarborough*. *See* Appellant's En Banc Br. at 36-38, *United States v. Squire*, No. 25-30324 (5th

Cir.) ("*Scarborough* said nothing about the Constitution"; "*Scarborough* did not involve, nor did the Court address, the question of whether such a broad law was constitutionally permissible.") (citing *Alderman*, 562 U.S. at 1167 (Thomas, J., dissenting from denial of certiorari)).

Moreover, *Fraternal Order of Police* attempted to distinguish *Lopez* on the ground that the school-zone statute there lacked "a jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," whereas § 922(g) contains such an element. 173 F.3d at 907-08 (quoting *Lopez*, 514 U.S. at 561). But a jurisdictional element built on the *Bass*/*Scarborough* "minimal nexus" reading that is satisfied by nothing more than proof that a firearm crossed a state line at some point in the past does not perform the case-by-case gatekeeping function *Lopez* explicitly demanded. It ensures only that the government can recite the statutory phrase for federal jurisdiction under the Commerce Clause. A "minimal nexus" approach also fails to "ensure," as *Lopez* requires, that "the firearm possession in question" has any present connection to commerce. *Lopez*, 514 U.S. at 561.

Mr. Thompson recognizes that *Fraternal Order of Police* remains the law of this Circuit as to its actual holding regarding § 922(g)(9). But *Fraternal Order of Police* does not resolve the immediate case, first, because it construed § 922(g)(9), not § 922(g)(1) and extending its reasoning here requires an independent judgment to expand the panel's holding. Second, even if *Fraternal Order of Police*'s reasoning extends to § 922(g)(1), it is built on the faulty inference of *Bass* described above, and its ultimate conclusion is only as that inference, which intervening authority has substantially eroded. Third, and independent of the first two points, even under *Fraternal Order of Police*'s own test, the indictment here fails to satisfy the case-by-case showing the panel itself said the Constitution requires, as explained below.

This Court should also recognize that *Fraternal Order of Police* was decided in 1999 and predates Justice Thomas's dissent from the denial of certiorari in *Alderman* (2011), joined by Justice Scalia, which first crystallized the critique that *Scarborough*-based reasoning "could very well remove any limit on the commerce power." 562 U.S. at 1167. It also predates both the Fifth Circuit's decision to rehear *Squire* en banc on precisely this question, as well as Justice Thomas's concurrence in *Hemani* (2026), which collects and endorses this line of criticism.

Mr. Thompson presently raises the broader Commerce Clause challenge to preserve it for further review.

### C. Under *Fraternal Order of Police* Itself, the Indictment's Bare Jurisdictional Allegation Does Not Satisfy the Case-by-Case Inquiry *Lopez* Requires.

*Fraternal Order of Police* did not hold that the government may satisfy the necessity of a Commerce Clause nexus simply by reciting the statutory phrase "in or affecting commerce" in the indictment. It held that "in any prosecution under the provision for possession, the government must prove that the defendant possessed the firearm 'in or affecting commerce.'" *Fraternal Order of Police*, 173 F.3d at 907 (emphasis added). This is an evidentiary requirement, not a pleading formality and it is the same requirement *Lopez* itself demanded. Afterall a jurisdictional element matters only if it "ensure[s], through case-by-case inquiry, that the firearm possession in question *affects* interstate commerce." *Lopez*, 514 U.S. at 561 (emphasis added).

The indictment here does not come close meeting this standard. It alleges only that the firearm and ammunition "had been possessed, shipped and transported in and affecting interstate and foreign commerce." It reflects a verbatim tracking of the statutory language, with no date, no route, and no circumstance of the asserted prior interstate movement. Nothing in the indictment ties that undated, unspecified history to Mr. Thompson's alleged possession on April 7, 2025, in any way that a "case-by-case inquiry" could test. Because the government has not alleged and,

indeed, cannot show the kind of case-by-case commerce connection that both *Lopez* and *Fraternal Order of Police* require, Count One of the Indictment fails to establish a constitutionally adequate jurisdictional basis. Dismissal is warranted on this ground alone regardless of the broader infirmities underpinning *Fraternal Order of Police*.

**Conclusion**

For the foregoing reasons, Mr. Thompson respectfully asks this Court to dismiss Count One of the Indictment charging a violation of 18 U.S.C. § 922(g)(1) as unconstitutional under the Second Amendment, both facially and as applied to him, and because it independently exceeds Congress's power under the Commerce Clause, both facially and as applied. In the alternative, Mr. Thompson asks the Court to hold that the indictment's bare jurisdictional allegation fails to satisfy *Fraternal Order of Police*'s own test, and to find that there are no facts in this case supplying a basis for that jurisdiction allegation.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER
/s/
Tezira Abe
Assistant Federal Public Defender
625 Indiana Ave. N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500